UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUFUS MERCER,<br><br>    Plaintiff,<br><br>  v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>    Defendant. | Case No. 13-cv-05057-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

## I. INTRODUCTION

Plaintiff Rufus Mercer ("Plaintiff") brings this civil rights action against Defendant Southwest Airlines Company ("Defendant" or "Southwest") for allegedly discriminating against Plaintiff because of his race. Pending before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. No. 20. Plaintiff has filed an Opposition (Dkt. No. 23) and Defendant has filed a Reply (Dkt. No. 24). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court hereby GRANTS Defendant's motion for the reasons set forth below.

## II. BACKGROUND

The following factual allegations are taken from Plaintiff's FAC, filed April 9, 2014. Dkt. No. 17. Plaintiff is an African American male who resides in California. FAC ¶ 3. On October 29, 2012, Plaintiff and his fiancé boarded Southwest Airlines Flight 854 at Los Angeles International Airport. *Id.* ¶ 1. They were heading to Houston, Texas to attend a dinner party at which Plaintiff's fiancé was to meet Plaintiff's family for the first time. *Id.* ¶ 9. Upon checking in

at the Southwest ticket counter, Plaintiff and his fiancé were told they could each bring two bags on board as carryon items. *Id.* ¶ 10. They proceeded through the security screening area with their carryon baggage without incident. *Id.*

Plaintiff observed, based on the number of passengers at the gate area, that the flight was not fully booked. *Id.* ¶ 11. He and his fiancé were among the first to board. *Id.* Plaintiff and his fiancé each boarded the aircraft carrying two appropriately-sized carryon bags. *Id.* ¶ 12. Plaintiff carried a laptop computer and a camera bag, and his fiancé carried a bag and a purse. *Id.* Noticing that his fiancé was struggling to navigate both her purse and her carryon bag through the aircraft aisle, Plaintiff reached behind him to help her with the carryon bag. *Id.* After Plaintiff's fiancé took her seat, Plaintiff secured his camera and laptop bags in the overhead storage bin and proceeded to do the same with his fiancé's carryon bag. *Id.* ¶ 13.

While he was handling his fiancé's bag, a Caucasian female flight attendant informed Plaintiff that he was over the two-item limit for carryon baggage. *Id.* Though Plaintiff politely explained that he was simply helping his fiancé with her bag, the flight attendant told him three times that he was over the limit. *Id.* Each time, Plaintiff politely explained that he was not, in fact, over the limit. *Id.* At no point did Plaintiff raise his voice or use offensive language. *Id.* ¶ 16. Plaintiff alleges that the flight attendant "failed to listen to [P]laintiff and ignored what he said," speaking to him in a "rude and dismissive tone of voice," and looking at him "with distaste and disdain." *Id.* ¶ 13.

Five minutes after Plaintiff and his fiancé took their seats, a different Caucasian female employee of Southwest, who appeared to Plaintiff to be a supervisor, told Plaintiff to gather his items as he was being removed from the flight. *Id.* ¶ 14. Plaintiff and his fiancé followed the employee off the plane without speaking. *Id.* Plaintiff alleges that he was ordered off the plane for no rational reason in sight and in earshot of the other passengers, causing him humiliation, distress, and anguish. *Id.*

Once off the plane, the employee told Plaintiff, without explanation, that the captain of Flight 854 did not want Plaintiff on the aircraft because he considered him a security threat. *Id.* ¶ 15. At no time did Plaintiff see the captain, nor was he ever questioned by security or airline

personnel. *Id.* ¶ 21. Plaintiff then relayed the story to two Southwest supervisors, one of whom told Plaintiff that his removal from the flight "made no sense." *Id.* ¶ 16. Plaintiff attributes his being singled out for removal from the flight to "intentional racial discrimination" rather than a "rational determination that [P]laintiff's presence was inimical to safety." *Id.* ¶ 15.

Plaintiff and his fiancé were then booked on a different Southwest flight departing approximately three hours later. *Id.* ¶ 17. Between the flights, they were not asked any security questions, and their luggage was not re-screened. *Id.* ¶ 21. Plaintiff and his fiancé boarded the second flight with the same carryon items, and Plaintiff again helped his fiancé stow her carryon bag, this time without incident. *Id.* ¶ 17. The pair arrived in Houston around 11:30 p.m., too late to attend the dinner party which had been the purpose of their trip. *Id.* ¶ 19.

Approximately eight days after sending a written complaint to Defendant, Plaintiff received two vouchers for free flights, which he regards as a concession that Defendant "acted wrongly in removing [P]laintiff" from the flight since the removal was "not based on legitimate security considerations." *Id.* ¶ 23.

Based on these allegations, Plaintiff asserts five causes of action against Defendant seeking damages, injunctive relief, and declaratory relief: (1) negligence; (2) intentional infliction of emotional distress ("IIED"); (3) violation of 49 U.S.C. § 40127 (prohibition of discrimination in air transportation); (4) violation of 42 U.S.C. § 2000a (prohibition against discrimination or segregation in places of public accommodation); and (5) violation of 42 U.S.C. § 1981 (prohibition of denial of equal rights under the law). *Id.* ¶¶ 30-36, 37-40.

On June 5, 2014, Defendant filed the present Motion to Dismiss. Dkt. No. 20. Plaintiff filed an Opposition[1] on May 12, 2014 (Dkt. No. 23) and Defendant filed a Reply on May 19, 2014 (Dkt. No. 24).

### III.  LEGAL STANDARD

Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a

---

[1] In the Opposition, Plaintiff withdrew the fourth claim for violation of 42 U.S.C. § 2000a. Opp'n at 24.

3

complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

banc) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A.     First Claim: Negligence

In his first cause of action for negligence, Plaintiff alleges that Defendant owed him a heightened duty of care "to exercise care, diligence and vigilance in the exercise of their contractual duties pursuant to the contract of carriage under which plaintiff was travelling," and that Defendant breached that duty when it (1) "had plaintiff deplaned from the aircraft under the guise of being a security threat when no such threat existed and plaintiff was innocently being a gentleman and helping his fiancé place her carryon bag in the overhead compartment as required by law; (2) failed "to properly and adequately train its cabin staff to listen to explanations provided by passengers regarding who owns hand luggage being put in the overhead compartment"; (3) failed "to properly train its pilots and cabin crew to investigate security and safety threats in the cabin on its flights so that they do not escalate an act of gentlemanliness to the level of being legally characterized as a security threat resulting in a passenger being wrongfully removed from a flight"; and (4) failed "to properly hire and train employees and agents to follow the law regarding equal treatment of passengers, and to protect passengers from being unlawfully discriminated against based on race, color and ancestry."  FAC ¶¶ 30-34.

Defendant argues that the state law which Plaintiff relies on as establishing the duty of care is impliedly preempted by federal law.  Mot. at 9.  Defendant takes the position that the federal standard embodied in 49 U.S.C. § 44902(b) is appropriate in place of a common law negligence standard.[2]  *Id.* at 11.  Defendant further argues that if the negligent training claim in particular is not preempted, Plaintiff has still failed to allege sufficient facts to support it under California law.  *Id.* at 10.

---

[2] The federal standard authorizes air carriers to "refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety."  49 U.S.C. § 44902(b).  Under this standard, a passenger who is removed from a flight "because the opinion of the pilot is arbitrary or capricious and not justified by any reason or rational appraisal of the facts, then the denial of passage is discriminatory."  *Cordero v. Cia Mexicana De Aviacion*, *S.A.*, 681 F.2d 669, 671-72 (9th Cir. 1982).  As Defendant points out, though Plaintiff uses language associated with the federal standard throughout the pleadings, he does not explicitly apply it.  As Plaintiff does not dispute Defendant on whether the federal standard is applicable, the Court need not address the issue here.

Plaintiff counters that the heightened standard of care applicable to common carriers is set forth in California Civil Code section 2103.[3]  He alleges that Defendant breached the standard of care by removing him from the flight "negligently and without exercise of reasonable care and diligence." FAC ¶ 31. Plaintiff further alleges that Defendant was negligent in training its employees as evidenced by their "failure to listen to passenger explanations," to "properly investigate security issues," and "to follow the law regarding equal treatment of passengers." Opp'n. at 18.

The elements of a negligence claim are: 1) the defendant owed a legal duty to the plaintiff; 2) the defendant breached this duty; and 3) the defendant's breach proximately caused the plaintiff's injuries. *See Wiener v. Southcoast Childcare Ctrs., Inc.*, 32 Cal. 4th 1138, 1142 (2004).

California Civil Code section 2103, which Plaintiff contends establishes Southwest's heightened duty of care as a common carrier, provides that "A carrier of persons for reward must give to passengers all such accommodations as are usual and reasonable, and must treat them with civility, and give them a reasonable degree of attention." Cal. Civ. Code § 2103. Defendant argues that the Federal Aviation Act of 1958, as amended, 49 U.S.C. § 40103, *et seq*. ("the FAA"), "preempts state law claims that encroach upon, supplement, or alter the federally occupied field of aviation safety and present an obstacle to the accomplishment of Congress's legislative goal to create a single, uniform system of regulating that field." Mot. at 9 (citing *Ventress v. Japan Airlines*, 747 F.3d 716, 722-23 (9th Cir. 2014); *see also Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007) ("Congress' intent in passing the FAA was to preempt the entire field of air safety.")). Thus, Defendant argues, Plaintiff's asserted basis for the heightened standard of care under section 2103, and the corresponding negligence claim, are preempted because Congress intended to occupy the field of aviation safety with the FAA. *Id*. Defendant argues in the alternative that failure to adequately train the crew in how to listen to and respond to passengers is

---

[3] Plaintiff originally asserted that Defendant owed Plaintiff a heightened duty of care "pursuant to the contract of carriage under which [P]laintiff was traveling," though it appears from Plaintiff's Opposition that he has since abandoned the argument that the contract of carriage is the basis for Defendant's legal duty. *See* FAC ¶ 30; Opp'n at 14.

"customer service," which, under the Airline Deregulation Act of 1978 ("ADA"),[4] as amended, 49 U.S.C. § 41713(b), falls within the expressly preempted category of airline "service." *Id.* at n.5.

Conceding that the field of aviation safety has been impliedly preempted by the FAA, Plaintiff maintains that his negligence claim does not implicate aviation safety as he posed no safety threat, and thus California law still supplies the standard of care. Opp'n. at 15, 17 ("section 2103 applies its heightened standard of care in claims not involving airline safety"). Plaintiff cites *Keum v. Virgin America*, in which the plaintiff's negligence and IIED claims arising out of an in-flight verbal and physical altercation were held not preempted, for the proposition that not all tort claims brought against airlines deal with airline safety. 781 F. Supp. 2d 944, 950 (stating that "while the state standard of care is preempted in the context of claims directly implicating airline safety, state laws and standards of duty apply to claims directed at matters not directly touching on airline safety or other fields with pervasive regulations."). Thus, the question becomes whether Plaintiff's claims directly implicate airline safety.[5]

In this case, the Court finds that Plaintiff's state law claims directly implicate airline safety because safety was the apparent basis for his removal from the flight, the event out of which the tort claims arise. Plaintiff was explicitly told by a member of the flight crew that "the Captain of Flight 854 did not want [P]laintiff on the aircraft as he considered [P]laintiff to be a security threat." FAC ¶ 15. Discounting this statement as pretext for intentional racial discrimination, Plaintiff misses the point. Defendant has it right that whether or not the captain was *correct* in his belief that Plaintiff posed a security threat, the fact that the safety of the flight was in question at

---

[4] An amendment to the FAA, the ADA provides in relevant part: "[A] State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b).

[5] Defendant attempts to distinguish *Keum* on the grounds that *Keum* involved a physical altercation and aviation safety was never even argued by the defendant airline, in contrast to the instant case. Reply at 3. In *Keum*, a passenger of Korean descent was harassed and physically harmed in an in-flight encounter with a flight crew member after using the first class restroom without authorization. 781 F. Supp. 2d at 943. She alleged various state-law tort claims against the airline, and the issue, as here, was whether the state-law claims were preempted. *Id.* The court found, without explanation, that the plaintiff's claims "[did] not clearly implicate airline safety," and applied the California standard of care. *Id.* at 950.

7

the time Defendant acted is what is relevant to this analysis. *See* FAC ¶ 15; Reply at 3.

In *Ventress*, a pilot sued his employer alleging that the airline retaliated against him for raising safety concerns by constructively terminating him for reasons related to his medical and mental fitness. 747 F.3d at 719. The court held that the FAA preempted the plaintiff's state law claims because ruling on those claims would "require the finder of fact to consider whether or not Ventress was medically fit to carry out his duties as a flight engineer . . . [which] would intrude in the area of airmen medical standards, which Congress intended to occupy exclusively." *Id.* at 720. The court noted that "[e]ntertaining such state law claims may also risk creating a fragmented patchwork of aviation safety standards under state law, thereby undermining the legislative goal of ensuring uniformity over aviation safety regulation." *Id.* at 722 (citing *Montalvo*, 508 F.3d at 473).

As in *Ventress*, Plaintiff's negligence claim requires the Court to determine whether Plaintiff, in fact, posed a safety threat in order to assess whether Defendant's conduct was justified. The field of aviation safety, including when an airline is authorized to remove someone from a flight, has been fully occupied by the FAA and corresponding regulations. *Ventress*, 747 F.3d 722-23. Thus, because Plaintiff's negligence claim, predicated on California Civil Code section 2103, is preempted by the FAA's occupation of the field of aviation safety,[6] Plaintiff has failed to establish that Defendant owed him a legal duty. Accordingly, the negligence claim is DISMISSED WITHOUT LEAVE TO AMEND.

**B.     Second Claim: Intentional Infliction of Emotional Distress**

In his second cause of action for intentional infliction of emotional distress, Plaintiff alleges that Defendant acted intentionally and /or recklessly when it removed him from the flight and failed to tell him why he had been removed. FAC ¶ 38. Plaintiff further alleges that the motivating factor "was not safety but race," and that Defendant "had no legitimate,

---

[6] Defendant further argues that Plaintiff's tort claims are expressly preempted by the ADA because they relate to Southwest's "services." Reply at 4. However, because the Court finds that the tort claims are impliedly preempted by the FAA, the Court need not address the issue of how "services" is defined for purposes of the ADA.

nondiscriminatory reason to believe that plaintiff posed a security threat, and defendant knew or should have known, that its discriminatory treatment of plaintiff would cause severe and extreme emotional and other damages to plaintiff." *Id.*

Defendant argues that Plaintiff's IIED claim is preempted by the federal standard codified in 49 U.S.C. § 44902(b). Mot. at 15. As previously mentioned, section 44902(b) sets a federal standard of conduct for an airline's refusal to transport a passenger for safety reasons.

Air carriers are afforded much discretion in their authority to remove a passenger from a flight based on a belief that the passenger "is, or might be, inimical to safety." 49 U.S.C. § 44902(b); *Shaffy v. United Airlines, Inc.*, 360 Fed. Appx. 729, 730 (9th Cir. 2009). In *Shaffy*, the plaintiff alleged racial discrimination and various tort claims after she was removed from a flight. As here, she denied having disobeyed the flight crew's instructions. *Shaffy*, 360 Fed. Appx. at 730. The Ninth Circuit affirmed the district court's holding that the plaintiff's state law tort claims were preempted because they "directly implicate[d] the decision by United to remove her from the flight for safety reasons." *Id.* at 731.

As in the case of Plaintiff's negligence claim, because the IIED claim implicates Southwest's decision to remove Plaintiff from the flight for safety reasons, whether or not Plaintiff, in fact, posed a threat, the IIED claim is preempted. Accordingly, the IIED claim is DISMISSED WITHOUT LEAVE TO AMEND.

**C.    Third Claim: Violation of 49 U.S.C. § 40127(a) of the ACAA**

In his third cause of action under 49 U.S.C. § 40127(a), Plaintiff alleges: "Without lawful justification, privilege or immunity, and acting in an arbitrary and capricious manner, defendant engaged in acts of discrimination . . . by having plaintiff wrongfully removed from Southwest Airlines' Flight 854 on October 29, 2012 based on his color and race because plaintiff is an African American. FAC ¶ 43. Plaintiff further alleges that his removal from the flight "was the product of intentional racial discrimination, not of a rational determination that plaintiff's presence was inimical to safety and was hence arbitrary and therefore beyond the scope of immune airline conduct." *Id.*

Defendant argues that 49 U.S.C. § 40127(a) does not create a private right of action to

enforce a private litigant's rights. Mot. at 14. Plaintiff, however, maintains that Defendant is liable because it discriminated against him based on his race in violation of Section 40127(a). Opp'n at 23.

49 U.S.C. § 40127(a) provides that "[a]n air carrier or foreign air carrier may not subject a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry." Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). In ascertaining whether a private right of action exists, a court must "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id*. To this end, "[s]tatutory intent ... is determinative, because [w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id*.

While the Ninth Circuit has yet to address this issue, other district courts have held that no private right of action exists under Section 40127. *See, e.g., Dennis v. Delta Air Lines*, 2011 WL 4543491, at *8 (E.D.N.Y. Aug. 18, 2011) (citing *Mutlu v. JetBlue Airways Corp.*, 2009 U.S. Dist. LEXIS 60164, at *13 (S.D.N.Y. Mar. 31, 2009) (granting airline's motion to dismiss plaintiff's discrimination claim brought pursuant to 49 U.S.C. § 40127(a) because the statute does not confer a private right of action); *Al-Watan v. Am. Airlines, Inc.*, 570 F. Supp. 2d 925, 931, n.5 (E.D. Mich. 2008); *Elnajjar v. Northwest Airlines*, 2005 WL 1949545, at *6 (S.D. Tex. Aug. 15, 2005). The Court finds the reasoning in these cases to be persuasive, and Plaintiff provides no authority to the contrary. Accordingly, this cause of action is DISMISSED WITHOUT LEAVE TO AMEND.

**D.      Fifth Claim: Violation of 42 U.S.C. § 1981**

In his fifth cause of action under 42 U.S.C. § 1981, Plaintiff alleges that "Defendant engaged in racially motivated acts of intentional and purposeful discrimination" when it removed him from the flight. FAC ¶ 53. Plaintiff maintains that "[t]here were no facts in existence surrounding plaintiff's removal from the flight that could rationally be connected or associated with airline security or safety," and that "[b]y deplaning plaintiff and telling plaintiff to deplane

1  Flight 854 in front of and within hearing distance of the other passengers on the subject flight,
2  defendant intentionally caused plaintiff to feel that he had been 'singled out' and 'targeted' as a
3  person not wanted on the aircraft by defendant because of his race and color." *Id.* ¶¶ 53, 55.

4  Defendant argues that the FAC fails to state a claim under 42 U.S.C. § 1981 because he
5  has not alleged any facts from which the Court can even infer that Southwest's actions were
6  racially motivated and purposefully discriminatory. Mot. at 21. In response, Plaintiff argues that
7  he has alleged facts "that raise a reasonable inference of intent to discriminate against him on the
8  basis of his race, hence satisfying the minimal prima facie showing that the defendant's acts were
9  purposefully discriminatory and racially motivated being an adequately plead racial discrimination
10 claim under § 1981." Opp'n at 28.

11 Section 1981 provides, in relevant part: "All persons within the jurisdiction of the United
12 States shall have the same right in every State and Territory to make and enforce contracts, to sue,
13 be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the
14 security of persons and property as is enjoyed by white citizens ...." 42 U.S.C. § 1981(a). "To
15 establish a claim under § 1981, a plaintiff must allege facts in support of the following elements:
16 (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race
17 by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in
18 the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Jefferson v.*
19 *City of Fremont*, 2012 WL 1534913, at *2 (N.D. Cal. Apr. 30, 2012). Moreover, "[a] claim under
20 § 1981 requires a showing of intentional racial discrimination." *Haile v. Sawyer*, 2003 WL
21 1907661, at *3 (N.D. Cal. Apr. 14, 2003), *aff'd*, 76 Fed. Appx. 129 (9th Cir. 2003) (unpub.)
22 (citing *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989).

23 In *Keum*, the court found allegations that plaintiff was denied services, prevented from
24 using facilities to which Caucasian passengers were permitted, and treated differently than
25 Caucasian passengers, were sufficient to state a claim under § 1981, "though not by a particularly
26 large margin." 781 F. Supp. 2d at 954. In *Trigueros v. Southwest Airlines*, the court found that
27 plaintiffs had alleged a prima facie case of discrimination by asserting they were denied the full
28 benefits or enjoyment of a public accommodation when they were singled out by being taken off

11

the plane twice for admonishment for refusing to (1) move a stowed carry-on bag after a Caucasian woman was not removed from the plane when she strenuously refused to move her bag, and (2) talking to fellow passengers about the incident. 2007 WL 2502151, at *4 (S.D. Cal. Aug. 30, 2007).

In contrast, although Plaintiff has alleged that he was treated unfairly by Southwest flight crew, he does not allege any facts that link the mistreatment to intentional racial discrimination. For instance, Plaintiff alleged that he is African American, and that he was removed from Southwest Flight 854 as a security risk after a Caucasian flight attendant repeatedly told him he was over the carry-on limit, and Plaintiff respectfully disagreed. FAC ¶ 13-14. However, Plaintiff does not allege that he was treated differently than similarly situated Caucasian passengers on the flight, or that there was any reference to his race at all. *See Adams v. U.S. Airways Group, Inc.*, 978 F. Supp. 2d 485, 499 (E.D. Pa. 2013) (In § 1981 action, plaintiffs stated a prima facie case of discrimination where they alleged that they had a racially charged argument with a U.S. Airways flight attendant who called Adams a "black bitch," gave her the middle finger, and impersonated an air marshal, while another U.S. Airways employee referred to plaintiffs collectively as "you people" after which the captain removed all of the African-American passengers from the plane and warned them to "keep their mouths shut" or they would be removed from another flight. ). Moreover, Plaintiff alleges that the pilot who made the decision to remove Plaintiff never spoke to him, and Plaintiff does not allege that the captain was aware of his race. FAC ¶ 20. Plaintiff also alleges that the Southwest supervisor told him that his removal "made no sense," that he was not subjected to further security screening, and that he was allowed to board another flight several hours later. FAC ¶¶ 16-17. Thus, even under the minimal pleading standards at the motion to dismiss stage, Plaintiff has failed to allege a cause of action for violation of 42 U.S.C. § 1981 based on racial discrimination. However, because it is possible that Plaintiff may be able to cure the defects in the FAC by amendment, this cause of action is DISMISSED WITH LEAVE TO AMEND.

## V. CONCLUSION

Based on the analysis above, the Court GRANTS Defendant's Motion to Dismiss as

follows:

1) The First Cause of Action for negligence is DISMISSED WITHOUT LEAVE TO AMEND;

2) The Second Cause of Action for intentional infliction of emotional distress is DISMISSED WITHOUT LEAVE TO AMEND;

3) The Third Cause of Action for violation of 49 U.S.C. § 40127 is DISMISSED WITHOUT LEAVE TO AMEND;

4) The Fourth Cause of Action for violation of 42 U.S.C. § 2000a is DISMISSED WITHOUT LEAVE TO AMEND.

5) The Fifth Cause of Action for violation of 42 U.S.C. § 1981 is DISMISSED WITH LEAVE TO AMEND. If Plaintiff chooses to amend this cause of action, he must allege facts showing intentional racial discrimination.

Plaintiff shall file a second amended complaint by October 10, 2014.

**IT IS SO ORDERED.**

Dated: September 19, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge