United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RUFUS MERCER,

Plaintiff,

v.

SOUTHWEST AIRLINES CO.,

Defendant.

Case No. 13-cv-05057-MEJ

**ORDER RE: MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. No. 29

## I. INTRODUCTION

Plaintiff Rufus Mercer ("Plaintiff") brings this civil rights action pursuant to 42 U.S.C. § 1981 against Defendant Southwest Airlines Company ("Defendant" or "Southwest") for discrimination based on race. Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. No. 29. Plaintiff has filed an Opposition (Dkt. No. 32) and Defendant has filed a Reply (Dkt. No. 35). The Court finds this matter suitable for disposition without oral argument and VACATES the January 8, 2015 hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** Defendant's Motion for the reasons set forth below.

## II. BACKGROUND

The following factual allegations are taken from Plaintiff's SAC, filed October 10, 2014. Dkt. No. 27. Plaintiff is a 52-year-old African American male who resides in California. SAC ¶ 3. On October 29, 2012, Plaintiff and his fiancé boarded Southwest Airlines Flight 854 at Los Angeles International Airport. *Id.* ¶ 9. They were heading to Houston, Texas to attend a dinner party at which Plaintiff's fiancé was to meet his family for the first time. *Id.* At the Southwest Airlines' check in counter for Flight 854, Plaintiff checked in two bags and his fiancé checked in

one bag, and they were told they could each bring two carryon items into the aircraft. *Id.* ¶ 10. They proceeded through the security screening area with their carryon baggage without incident. *Id*.

At the assigned gate, Plaintiff and his fiancé were in the first group of passengers to board the aircraft. *Id.* ¶ 11. Plaintiff carried a laptop computer (in a soft cover bag) measuring approximately 16x13x2 inches, and a camera bag measuring approximately 16x8x6 inches. *Id.* ¶ 12. Plaintiff's fiancé had a carry-on bag measuring approximately 9x13x17 inches and a small personal purse. *Id.* As Plaintiff walked down the aircraft aisle, he saw a Caucasian male passenger that was about 250 pound and about 6 feet tall carrying a large suitcase and a jumbo-sized guitar case measuring between 40-50 inches long, which was outside the measurement dimensions permitted for carryon baggage for the flight. *Id.*

After observing this Caucasian passenger with the guitar case, Plaintiff noticed that his fiancé was struggling to navigate both her purse and her carryon bag through the aircraft aisle, so he reached behind him to help her with the carryon bag. *Id.* ¶ 13. After his fiancé took her seat, Plaintiff secured his camera and laptop bags in the overhead storage bin and proceeded to do the same with his fiancé's carryon bag. *Id.*

While he was handling his fiancé's bag, a Caucasian female flight attendant informed Plaintiff that he was over the two-item limit for carryon baggage. *Id.* ¶ 14. Though Plaintiff politely explained that he was simply helping his fiancé with her bag, the flight attendant told him three times that he was over the limit. *Id.* Each time, Plaintiff politely explained that he was not, in fact, over the limit. *Id*. At no point did Plaintiff raise his voice or use offensive language. *Id.* ¶ 17. Plaintiff alleges that the flight attendant "failed to listen to [P]laintiff and ignored what he said," speaking to him in a "rude and dismissive tone of voice," and looking at him "with distaste and disdain." *Id.* ¶ 14. The flight attendant then said to Plaintiff "in a nasty, discriminatory and racially charged voice, 'I'll take care of YOU' and then she said to [P]laintiff 'I'll show YOU' saying the word YOU in a louder nasty racially charged tone of voice." *Id.*

While Plaintiff was still standing in the aisle, he saw the flight attendant go down to the front of the aircraft, where the cockpit door was wide open, and speak to the people in the cockpit.

*Id.* ¶ 15. The people in the cockpit could see down the aisle where Plaintiff stood. *Id.* Plaintiff and his fiancé then sat in their assigned seats. *Id.*

Five minutes after Plaintiff and his fiancé took their seats, a different Caucasian female employee of Southwest, who appeared to be a supervisor, told Plaintiff to gather his items as he was being removed from the flight. *Id.* Plaintiff and his fiancé followed the employee off the plane without speaking. *Id.* The supervisor kept asking Plaintiff to take his third bag from the overhead compartment, but he explained several times that there was no third bag. *Id.* As he walked off the aircraft, Plaintiff "understood that he was getting kicked off the flight for no rational reason and he felt absolute gut wrenching humiliation in view and ear shot of other passengers, and in front of his fiancé," and he "felt he had been 'singled out' and 'targeted' wrongly as a person not wanted on the aircraft by [D]efendant because of his race and color, and that action by [D]efendant made [P]laintiff feel unbearable humiliation, distress and anguish." *Id.*

Once off the plane, Plaintiff observed that the aircraft door was closed and the flight immediately departed, with the Caucasian male passenger with the guitar case on board. *Id.* ¶ 16. The supervisor told Plaintiff, without explanation, that the captain of Flight 854 did not want him on the aircraft because he considered him a security threat. *Id*. Plaintiff did not ever see the Captain or First Officer of Flight 854, but they may have seen him as he stood in plain view of the cockpit while the flight attendant spoke to them. *Id.* ¶ 21.

Plaintiff relayed the story to two other Southwest Airlines supervisors, one of whom told Plaintiff that his removal from the flight "made no sense." *Id.* ¶ 17. Plaintiff attributes his being singled out for removal from the flight to "intentional racial discrimination" rather than a "rational determination that [P]laintiff's presence was inimical to safety." *Id.* ¶ 16. He and his fiancé were then booked on a different Southwest flight departing approximately three hours later. *Id.* ¶ 18. Between the flights, they were not asked any security questions, and their luggage was not re-screened. *Id.* ¶ 21. Plaintiff and his fiancé boarded the second flight with the same carryon items, and Plaintiff again helped his fiancé stow her carryon bag, this time without incident. *Id.* ¶ 18. The pair arrived in Houston around 11:30 p.m., too late to attend the dinner party which had been the purpose of their trip. *Id.* ¶ 19.

Approximately eight days after sending a written complaint to Defendant, Plaintiff received two vouchers for free flights, which he regards as a concession that Defendant's "actions in removing [P]laintiff from Flight 854 were not based on legitimate security considerations and that [P]laintiff had not been inimical to safety had he been permitted to stay on Southwest Airlines' Flight 854 on October 29 2012." *Id.* ¶ 23.

Based on these allegations, Plaintiff filed his initial Complaint in this matter on October 29, 2013, alleging five causes of action: (1) negligence; (2) intentional infliction of emotional distress; (3) violation of 49 U.S.C. § 40127 (prohibition of discrimination in air transportation); (4) violation of 42 U.S.C. § 2000a (prohibition against discrimination or segregation in places of public accommodation); and (5) violation of 42 U.S.C. § 1981 (prohibition of denial of equal rights under the law). Dkt. No. 1. He subsequently filed a First Amended Complaint on April 9, 2014, alleging the same causes of action. Dkt. No. 17.

On June 5, 2014, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint. Dkt. No. 20. In response, Plaintiff voluntarily withdrew his fourth claim for violation of 42 U.S.C. § 2000a. Dkt. No. 23 at 24. The Court granted Defendant's motion on September 19, 2014, but afforded Plaintiff leave to amend his cause of action under 42 U.S.C. § 1981. Dkt. No. 26. As to Plaintiffs' state law claims, the Court found that they were preempted under the Federal Aviation Act of 1958, as amended, 49 U.S.C. § 40103, et seq. ("the FAA"). *Id.* at 6-9. The Court also held that no private right of action exists under 49 U.S.C. § 40127. *Id.* at 10. As to the § 1981 claim, although Plaintiff alleged that he was treated unfairly by Southwest flight crew, the Court found that he failed to allege any facts that linked the mistreatment to intentional racial discrimination. *Id.* at 12. Accordingly, the Court granted leave to amend to cure this defect. *Id.*

Defendant filed the present Motion to Dismiss on November 10, 2014. Plaintiff filed his Opposition on December 1, 2014, and Defendant filed a Reply on December 16, 2014.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

**IV. DISCUSSION**

In response to the Court's previous Order, Plaintiff amended his complaint to include the following factual allegations to establish discrimination based on race: (1) introduction of the Caucasian male passenger carrying a jumbo-sized guitar case outside the measurement dimensions permitted for carryon baggage for the flight; (2) that the initial flight attendant spoke in a nasty, discriminatory and racially charged voice; (3) her use of the pronoun "you" when referring to him was said "in a louder nasty racially charged tone of voice"; and (4) the cockpit door was open and "the Captain and the First Officer may . . . have seen Plaintiff as he stood in plain view of the cockpit door."

In its Motion, Defendant first argues that the FAA preempts Plaintiff's § 1981 claim just as it does his dismissed state law claims. Mot. at 13. Even if the § 1981 claim were not preempted, Defendant argues that none of these additional facts evidences its intentional discrimination based on Plaintiff's race. *Id.* at 7. Specifically, Defendant maintains that Plaintiff has not alleged overt acts coupled with some direct evidence that its conduct was motivated by animus against his protected class. *Id.* at 8.

In response, Plaintiff argues that preemption does not apply in a case such as this, where his removal from the flight was based on his race. Opp'n at 19. As to the merits of his claim, Plaintiff argues that the allegations in the SAC, "at a minimum raise a reasonable inference of intent to discriminate against [P]laintiff on the basis of his race, hence satisfying the minimal prima facie showing that the [D]efendant's acts were purposefully discriminatory and racially motivated." *Id.* at 18.

**A. Preemption**

Defendant argues that Plaintiff's § 1981 claim is preempted because safety was the basis for his removal for the flight, and whether or not the captain was correct in this belief, § 44902(b) trumps anti-discrimination statutes. Mot. at 12-13. Plaintiff agrees that claims may be preempted if safety is the basis for removal, but argues that an airline's decision must not be arbitrary and capricious, and a passenger's "removal from a flight that is motivated by a passenger's race is inherently arbitrary and capricious." Opp'n at 19.

Section 44902(b) provides that an "air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 49 U.S.C. § 44902(b). The pilot of an aircraft is responsible for making this decision. 14 C.F.R. § 91.3(a) ("The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft."); *see also Cerqueira v. Am. Airlines, Inc.*, 520 F.3d 1, 13 n.13 (1st Cir. 2008) (noting that, as a matter of law, the pilot in command makes the decision to remove a passenger). Thus, an airline's refusal to transport a passenger cannot give rise to a claim for damages unless the decision was "arbitrary and capricious." *Dasrath v. Cont'l Airlines, Inc.*, 467 F. Supp. 2d 431, 445 (D.N.J. 2006) (citing *Williams v. Trans World Airlines*, 509 F.2d 942, 947 (2d Cir. 1975)). This grants airlines "broad, but not absolute," discretion to remove passengers for safety reasons. *Id.*

It is undisputed that Flight 854's captain made the decision to remove Plaintiff. However, while he had discretion to act under § 44902(b), such discretion is not "a license to discriminate." *Bayaa v. United Airlines, Inc.*, 249 F. Supp. 2d 1198, 1205 (C.D. Cal. 2002) (finding that § 44902 does not preempt civil rights claims under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d); *Adams v. U.S. Airways Grp., Inc*., 978 F. Supp. 2d 485, 499 (E.D. Pa. 2013) (dismissing negligence claim as preempted by FAA while permitting § 1981 claim to proceed); *Chowdhury v. Nw. Airlines Corp.*, 238 F. Supp. 2d 1153, 1154 (N.D. Cal. 2002) (finding that the FAA does not preempt discrimination claims under § 1981 and Title VII). Therefore, while Defendant may ultimately be able to show that Plaintiff cannot prove discrimination, such a factual determination is not appropriate as part of the Court's inquiry on a motion to dismiss. Accordingly, Defendant's motion to dismiss on preemption grounds is DENIED.

**B. Section 1981**

Having determined that Plaintiff may bring a claim under § 1981, the Court must still analyze whether he has stated a plausible claim for relief. Section 1981 prohibits discrimination in the making and enforcement of contracts by reason of race, national origin, or ancestry. 42 U.S.C. § 1981(a). "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate

on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Jefferson v. City of Fremont*, 2012 WL 1534913, at *2 (N.D. Cal. Apr. 30, 2012) (citation omitted). Thus, "[a] claim under § 1981 requires a showing of intentional racial discrimination." *Haile v. Sawyer*, 2003 WL 1907661, at *3 (N.D. Cal. Apr. 14, 2003), *aff'd*, 76 F. App'x. 129 (9th Cir. 2003) (citing *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989)).

There is no dispute that Plaintiff, an African American man, meets the first element as a member of a racial minority. There also appears to be no dispute as to the third element. Thus, the focus of the Court's analysis is whether Plaintiff meets the second element of intentional discrimination based on his race.

In *Keum v. Virgin America, Inc.*, a passenger of Korean descent, who was seated in the coach section of the plane, was harassed and physically harmed by a flight crew member after using the first class restroom. 781 F. Supp. 2d 944, 947 (N.D. Cal. 2011). The plaintiff alleged that a Caucasian passenger, who was also seated in coach, used the same restroom without receiving the same treatment. *Id.* The court found that these allegations were sufficient to state a claim under § 1981. *Id.* at 954. In *Trigueros v. Southwest Airlines*, the court found that plaintiffs, who were both African Americans, alleged a prima facie case of discrimination when they were singled out by being taken off the plane twice for admonishment for (1) refusing to move a stowed carry-on bag after a Caucasian woman was not removed from the plane when she strenuously refused to move her bag, and (2) talking to fellow passengers about the incident. 2007 WL 2502151, at *4 (S.D. Cal. Aug. 30, 2007). The court concluded that plaintiffs had "presented sufficient circumstantial evidence to permit an inference of a discriminatory motive based on their allegations that defendant subjected them to treatment different from that accorded a similarly situated white passenger on their flight." *Id.*

Here, unlike his previous pleadings in which Plaintiff did not allege any facts that linked his mistreatment to intentional racial discrimination, the Court finds that Plaintiff has now presented sufficient allegations to state a claim that is plausible on its face. In support of his claim that he suffered racial discrimination, Plaintiff asserts that: (1) there are no facts supporting the



United States District Court
Northern District of California

notion that he was a security threat; (2) a flight attendant spoke to him rudely and in a dismissive tone of voice, looked at him with distaste and disdain, and referred to him as "you," stating "I'll take care of you" and "I'll show you"; (3) he was not treated in a manner equal to the way that other passengers on the flight were treated, including a Caucasian passenger carrying a jumbo-sized guitar case that was oversized for carryon baggage; (4) the Captain and First Officer may have observed that he was African American; and (5) one of Southwest's supervisors told him that his removal from the flight "made no sense." These allegations are sufficient to state a claim under § 1981. *Keum*, 781 F. Supp. 2d at 954; *Trigueros*, 2007 WL 2502151, at *4.

Defendant argues that Plaintiff's individual allegations do not establish that its conduct was motived by animus against a protected class. Mot. at 8-9. As to the Caucasian passenger with the guitar case, Defendant maintains that he and Plaintiff were not similarly situated because there is no allegation that the man "engaged in any colloquy with the flight attendants, much less a discussion that escalated to the point that it was brought to the attention of the captain." *Id.* at 9. Defendant also notes that the flight attendant's use of the word "you" is a pronoun that is routinely used in conversation, with neither a racial meaning nor connotation. *Id.* at 10. As to allegations that a flight attendant spoke to Plaintiff with a "nasty, discriminatory and racially charged voice," Defendant argues that this is a subjective construct that cannot evidence racial animus. *Id.* at 11. Defendant also argues that the flight attendant was not the person who made the removal decision, so her tone of voice is irrelevant. *Id.* Finally, Defendant contends that an allegation that the pilots "could have seen" Plaintiff and thus "could have discerned his race" does not provide direct evidence that Defendant's conduct was motivated by animus against a protected class. *Id.* at 12.

In support of its arguments, Defendant cites cases that address evidentiary findings at the summary judgment stage, making such arguments in this case premature at best. At this stage, the Court's only concern is whether Plaintiff has set forth "enough facts to state a claim to relief that is plausible on its face[.]" *Twombly*, 550 U.S. at 570. Thus, "such determinations are reserved for the fact-finder and are beyond the scope of the court's inquiry on a motion to dismiss." *Allen v. U.S. Bancorp*, 264 F. Supp. 2d 945, 950 (D. Or. 2003) (finding the plaintiff stated a cause of action under § 1981 where he alleged that he was required to change lines at a bank because of his

race). Viewing Plaintiff's allegations in the light most favorable to him, and bearing in mind that evidence of the captain's intent is solely in the possession of Defendant, the Court finds that Plaintiff's allegations give rise to a plausible claim of intentional discrimination.

Defendant also cites *Dandridge-Barnett v. Barnes & Noble*, 2014 WL 5761225, at *2 (C.D. Cal. Nov. 5, 2014), in which the court dismissed the plaintiff's § 1981 claim at the motion to dismiss stage. However, the court's analysis did not include any facts regarding allegations related to race—the plaintiff purchased a bag of chips at a Barnes & Noble store, went to the restroom, and then walked outside the store to catch a bus, after which management approached her and accused her of not purchasing anything. *Id.* at *1. Further, although the court dismissed the complaint for failure to meet any of the elements of a § 1981 claim, it granted plaintiff leave to amend to include such allegations. *Id.* at *3. As discussed above, unlike the plaintiff in *Dandridge*, Plaintiff has stated sufficient allegations to satisfy his pleading burden with respect to the elements of a § 1981 claim. Therefore, Defendant's motion to dismiss the § 1981 claim is DENIED.

**C. Punitive Damages**

Plaintiff's prayer for relief includes a claim for punitive damages. SAC at 15. Defendant argues that this claim must be dismissed because, as Plaintiff "has failed to even satisfactorily allege intentional discrimination in this case, it necessarily follows that he has not alleged conduct that is even more aggravated and malevolent." Mot. at 14. However, the Court finds that Plaintiff has pled sufficient allegations that Defendant acted with the requisite intent that would permit an award of punitive damages. *See Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1019 (S.D. Cal. 2000) ("In federal court, a plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent."); *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1184 (E.D. Cal. 2005) and cases cited therein (same). Here, Plaintiff alleges that he had been "'singled out' and 'targeted' wrongly as a person not wanted on the aircraft by [D]efendant because of his race and color, and that action by [D]efendant made [P]laintiff feel unbearable humiliation, distress and anguish." SAC ¶ 15. Plaintiff further alleges that he suffered "nasty, discriminatory and racially charged" actions, and

that Defendant's decision was "arbitrary and capricious." *Id.* ¶¶ 14, 16. These allegations are sufficient to state a claim of entitlement to punitive damages at this stage of the litigation.

## V. CONCLUSION

Based on the analysis above, the Court **DENIES** Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: December 18, 2014

MARIA-ELENA JAMES
United States Magistrate Judge